**Willard P. Hunnewell v. Catamount National Bank and Robert H. Baldwin**

[406 A.2d 386]

No. 191-78

Present: Barney, C.J., Daley, Larrow and Hill, JJ., and Smith, J. (Ret.), Specially Assigned

Opinion Filed September 10, 1979

*Divoll and Doores, P.C.*, Bellows Falls, for Plaintiff.

*Witten & Carter, P.C.*, Bennington, for Defendants.

Larrow, J. Plaintiff Hunnewell appeals the direction of a verdict and resultant judgment against him in a civil action for conspiracy, as to the defendant Catamount National Bank (now Catamount Bank and hereinafter Catamount). A directed verdict in his favor against the other defendant, Baldwin, is not here in question, even though it was based upon failure to appear and might more appropriately be considered a default judgment.

An earlier phase of this litigation was before this Court in *Strong* v. *Hunnewell*, 131 Vt. 516, 310 A.2d 32 (1973). That total factual situation is extremely involved, centering around successive mortgages to a valuable piece of commercial property, assignments thereof, foreclosure proceedings and eventual sale to one Strong, with whom a settlement was effectuated prior to the instant action. Recital of all the facts would serve no useful purpose, as the issues presented for decision are relatively narrow and agreed upon. Agreeing upon the definition of conspiracy set out in *State* v. *Stewart*, 59 Vt. 273, 286–87, 9 A. 559, 567 (1887), the parties center their controversy around the legality of the defendant's purpose and the character, illegal *vel non*, of acts done in furtherance of the alleged conspiracy. These issues govern disposition of the appeal, since without an illegal purpose, or the use of illegal means to accomplish a legal purpose, the charge of conspiracy must fail.

Catamount was the holder of several mortgages upon the property in question. Hunnewell also held a mortgage on the

premises, which was, by agreement, subordinate to the Catamount mortgages. Catamount's mortgages were in default, and in foreclosure. A negotiated sale to one C. Peter Strong, which would have netted plaintiff a substantial part of his indebtedness, fell through. Catamount later refused to sell its interest to Hunnewell at about a 10% discount, sold to Strong at full value, and assigned its position to Strong. A conveyance to Strong from the corporate owner was made without corporate action authorizing the deed.

Plaintiff claims that the object to be accomplished by the actions complained of was a "by-passing" of the plaintiff's position and eventual transfer of the property to Strong or his corporate nominee. We are not clear as to the precise meaning of this contention. We are pointed to no decision, and know of none, holding such a purpose to be illegal. And we are directed to no evidence that there was any factual misrepresentation to anyone concerned in any way material to the transactions being completed. Hostility toward the plaintiff may have been demonstrated, but this is not, in itself, illegality.

Two illegal overt acts are claimed by the plaintiff. The first is a failure by Catamount to "recognize" the "rights" of a junior lienholder. The second is the purported transfer of title by the owner corporation without the required authorization.

██ The first claim is based upon the unique theory that there is some duty on the part of a senior lienholder to sell or assign its position to a junior lienholder willing to purchase that interest. No cases are cited for the proposition, which runs contra to the clear holding of *Stewart* v. *Thompson,* 3 Vt. 255, 263–64 (1831), that a mortgagee may at any time assign his interest in the debt and mortgage, with the assignee thereafter standing in his place and stead with respect to payment, suit or foreclosure. Certainly the mortgagee is under no duty to discount its obligation, as appears to have been the plaintiff's offer here. Even had the offer been, as plaintiff contends, to purchase for face value, there is no duty on the mortgagee to sell its interest. No claim is here made of any offer of *payment,* as distinguished from purchase, and we do not reach that issue.

■ The second claimed illegal overt act is the execution and delivery of the owner's corporate deed to Strong, without the required corporate authorization. We are again pointed to no decisions holding such an action to be "illegal" within the meaning of conspiracy definitions. And again, we are pointed to no involvement of Catamount in the act in question, beyond a bald statement that the "very nature of its business" would make it "hard put to prove" that it was not aware of what was going on and an active participant therein. This is neither adequate proof nor adequate briefing. And, even were the act properly termed illegal and Catamount a participant in it, no adverse consequences to the plaintiff appear. His status as a lienholder and his order of priority would not be affected by the deed in question even if properly authorized. His rights, whatever they were, were not affected by the deed, authorized or not. Indeed, the plaintiff's case as a whole suffers from this infirmity. It is not even claimed that any of the acts brought into question in any way lessened or destroyed his security interest. He justifies his claim of damage only by the award of substantial damages against defendant Baldwin in the trial court. As we have pointed out, this issue was not litigated because Baldwin defaulted; the judgment can hardly be said, under any theory, to be binding upon Catamount.

■ Plaintiff also briefed claimed error in the exclusion of a proffered exhibit. Catamount's president had admitted receiving only one phone call in reference to the matters in question, and plaintiff offered a telephone charge record of his attorney against himself showing several calls to the Bennington area during the period. In light of our foregoing discussion as to the general merit of plaintiff's claims, we are unable to perceive how the offered exhibit, if received, could have done more than impeach, or could have supplied even an inference of the illegality in purpose or actions which plaintiff failed to establish. The substantial rights of the parties were not affected by the error, if any. V.R.C.P. 61.

*Judgment affirmed.*